UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



------------------------------------------------------------------------- x

GERMAIN CANO, KEVIN DARNELL, PETER EPPEL,
MICHAEL GLENN, TRAVIS GORDON, JACQUELINE
GUARINO, WESLEY JONES, GREGORY MAUGERI,
MICHAEL MCGHEE, DMITRIY MILOSLAVSKIY,
STEVEN MODES, NAKAITA MOORE, KERRY
SCOTT, MICHAEL SPALANGO, RAYMOND
TUCKER, NANCY VIGLIONE, ELLI VIKKI,
individually and on behalf of a class of all others similarly
situated,

**CLASS ACTION**
**COMPLAINT**

CV 13          3341

Jury Trial Demanded

Plaintiffs,

-against-

KUNTZ, J.

THE CITY OF NEW YORK, POLICE COMMISSIONER
RAYMOND KELLY, DEPUTY COMMISSIONERS
JOHN DOES 1-5 (representing the Deputy Commissioners
who supervised the operation of Brooklyn Central Booking
from June 12, 2010 to the present), POLICE OFFICERS
JOHN DOES 1-5 (representing the commanding officers of
Brooklyn Central Booking from June 12, 2010 to the
present),

POHORELSKY, M.J.

Defendants.

------------------------------------------------------------------------- x

## PRELIMINARY STATEMENT

1.      On May 23, 2013, in *Walker v. Schult*, -- F.3d --, 2013 U.S. App. LEXIS

10397 (2d Cir. May 23, 2013), the United States Court of Appeals for the Second Circuit ruled

that it is unconstitutional to incarcerate a convicted prisoner in a jail cell with "inadequate space

and ventilation, stifling heat in the summer and freezing cold in the winter, unsanitary

conditions, including urine and feces splattered on the floor, insufficient cleaning supplies, a

mattress too narrow for him to lie on flat, and noisy, crowded conditions that made sleep difficult

and placed him at constant risk of violence and serious harm from cellmates." *Id.* at **16-17.

2.     The defendants in this case have maintained the aforesaid unconstitutional conditions, and much worse, in Brooklyn Central Booking, a pre-arraignment holding facility, for at least the past 25 years.

3.     The named plaintiffs -- individuals who were detained in Brooklyn Central Booking between their arrest and arraignment during the past three years -- bring this class action alleging that defendants violated their rights under 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution by subjecting them and others similarly situated to unconstitutional conditions of confinement.  Plaintiffs seek class certification pursuant to Fed. R. Civ. P. 33, declaratory and injunctive relief pursuant to class certification under Rule 23(b)(2), money damages pursuant to class certification under Rule 23(b)(3), attorney's fees and costs, and such other and further relief as the court deems just and proper.

## JURISDICTION & VENUE

4.     This action is brought pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

5.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because the City of New York is subject to personal jurisdiction in this District and because the acts in question occurred in this District.

## JURY TRIAL

6.     Pursuant to Fed. R. Civ. P. 38, plaintiffs demand a jury trial.

2

## PARTIES

7.     The named plaintiffs are individuals who were detained in Brooklyn Central Booking between their arrests and arraignments during the past three years.

8.     The proposed class is all individuals who have been detained in Brooklyn Central Booking since June 12, 2010.

9.     The City of New York is a municipal corporation organized under the laws of the State of New York. The City acted pursuant to a policy, practice and/or custom at all relevant times herein.

10.     Raymond Kelly was the Commissioner of the New York City Police Department ("NYPD") from 1992 to 1994 and from January 2002 to the present. Kelly acted under color of state law and in his capacity as the Commissioner of the NYPD at all relevant times herein. Kelly is sued in his individual and official capacities.

11.     Deputy Commissioners John Does 1-5 are unidentified Deputy Commissioners of the NYPD who supervised the operation of Brooklyn Central Booking from June 12, 2010 to the present. These defendants acted under color of state law and in their capacities as Deputy Commissioners of the NYPD at all relevant times herein. These defendants are sued in their individual and official capacities.

12.     Police Officers John Does 1-5 are the unidentified commanding officers of Brooklyn Central Booking from June 12, 2010 to present. These defendants acted under color of state law and in their capacities as commanding officers of the NYPD at all relevant times herein. These defendants are sued in their individual and official capacities.

3

## CLASS ACTION ALLEGATIONS

13.     The named plaintiffs seek to represent a plaintiff class under Fed. R. Civ. P. 23 consisting of all individuals who have been detained in Brooklyn Central Booking since June 12, 2010 (three years from the date that this case was filed).  This action is brought pursuant to Rules 23(a), (b)(2) and (b)(3).  The class meets the requirements of Rule 23 as follows.

14.     The members of the class are so numerous as to render joinder impractible.  Tens of thousands of individuals were confined in Brooklyn Central Booking during the class period.  Moreover, thousands of these individuals are not aware that their constitutional rights have been violated, cannot afford an attorney, and/or are unable to retain an attorney on a contingency fee basis because many lawyers believe that any damage award would be too small to justify an individual lawsuit.

15.     There are questions of law and fact common to the class.  Such questions include but are not limited to:

(a)   Whether the City of New York violated the Due Process Clause of the Fourteenth Amendment to the Constitution by subjecting plaintiffs and the members of the class to a policy, practice and/or custom of unconstitutional conditions of confinement in Brooklyn Central Booking;

(b)   Whether Commissioner Raymond Kelly and the other individual defendants violated the Due Process Clause of the Fourteenth Amendment to the Constitution by intentionally subjecting members of the class to unconstitutional conditions of confinement in Brooklyn Central Booking and/or by being deliberately indifferent to the unconstitutional conditions of confinement in Brooklyn Central Booking;

4

(c) Whether the defendants, municipal policymakers and supervisory personnel failed to investigate and remedy the unconstitutional conditions of confinement in Brooklyn Central Booking despite having been informed of the conditions;

(d) Whether the defendants, municipal policymakers and supervisory personnel failed to adequately train, supervise, monitor and discipline members of the NYPD and other municipal personnel who contribute to the unconstitutional conditions of confinement in Brooklyn Central Booking;

(e) Whether municipal policies, practices and procedures show that defendants were deliberately indifferent to the unconstitutional conditions of confinement in Brooklyn Central Booking.

16.    The claims of the named plaintiffs are typical of those of the class.  The named plaintiffs and the members of the class are seeking and will benefit from remedial and monetary relief for violations of the Due Process Clause from being confined in Brooklyn Central Booking.

17.    The named plaintiffs and the undersigned class counsel will fairly and adequately protect the interests of the class.  The named plaintiffs have no conflicts with any class members and are genuinely interested in effectuating changes in the operation of Brooklyn Central Booking.  Attorneys Richard Cardinale and Michael Hueston have been practicing civil rights law since 1995, were class counsel in a class action alleging illegal strip searches by the City of New York, and defended the State of New York and state officials in two significant class actions lawsuits.  Attorney Andrew Rendeiro has been engaged in civil rights litigation with the City of New York for several years, is the past President of the Kings County Criminal

Bar Association, and is a member of the Grievance Committee of the State of New York for the Second, Eleventh and Thirteenth Judicial Districts.

18.     The plaintiff class should be certified pursuant to Rule 23(b)(2) because the defendants have acted or failed to act on grounds generally applicable to the class thereby making class-wide declaratory and injunctive relief appropriate.

19.     The plaintiff class should be certified pursuant to Rule 23(b)(3) because a class action is superior to any other method for the fair and efficient adjudication of this legal dispute and because the questions of law or fact common to class members predominate over any questions affecting only individual members.  Certifying a class involving tens of thousands of potential plaintiffs would promote judicial economy and individual lawsuits could lead to inconsistent results.  Further, without class certification, the alleged constitutional violations would not be adjudicated as many of the potential class members do not possess the knowledge or resources to bring a lawsuit, and the relatively small amount of damages suffered by each individual plaintiff decreases the likelihood of individual lawsuits.  Finally, plaintiffs' claims allege a single unconstitutional practice and there is a strong commonality of the violation of the harm, making class certification especially appropriate.

## STATEMENT OF FACTS

20.     "When the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being.  The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - *e.g.*, food, clothing, shelter, medical care, and reasonable safety - it

6

transgresses the substantive limits on state action set by the . . . Due Process Clause." *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 199-200, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989) (citation omitted).

21.    "Although a pretrial inmate mounting a constitutional challenge to environmental conditions must show deliberate indifference, it may generally be presumed from an absence of reasonable care." *Benjamin v. Fraser*, 343 F.3d 35, 50 (2d Cir. 2003).

22.    The following plaintiffs, after being arrested and processed at a police precinct, were incarcerated in Brooklyn Central Booking to await arraignment:

(a) GERMAIN CANO after being arrested on about December 15, 2012;

(b) KEVIN DARNELL after being arrested on or about December 22, 2012;

(c) PETER EPPEL after being arrested on or about January 21, 2013;

(d) MICHAEL GLENN after being arrested on or about July 10, 2011;

(e) TRAVIS GORDON after being arrested on or about December 19, 2012;

(f) JACQUELINE GUARINO after being arrested on or about January 17, 2012;

(g) WESLEY JONES after being arrested on or about May 9, 2013;

(h) GREGORY MAUGERI after being arrested on or about May 4, 2013;

(i) MICHAEL MCGHEE after being arrested on or about October 3, 2012 and February 19, 2013;

(j) DMITRIY MILOSLAVSKIY after being arrested on or about February 17, 2013;

(k) STEVEN MODES after being arrested on or about October 25, 2011;

(l) NAKAITA MOORE after being arrested on or about May 4, 2012;

(m) KERRY SCOTT after being arrested on or about September 19, 2012;

(n) MICHAEL SPALANGO after being arrested on or about March 13, 2013;

(o) RAYMOND TUCKER after being arrested on or about March 13, 2013;

(p) NANCY VIGLIONE after being arrested on or about November 1, 2011;

(q) ELLI VIKKI after being arrested on or about July 26, 2012.

23.    The plaintiffs, on average, spent between ten and 24 hours in Brooklyn Central Booking.

24.    Brooklyn Central Booking is owned by the City of New York and operated by the City of New York and the other defendants.

25.    While incarcerated in Brooklyn Central Booking, plaintiffs and the potential members of the class were housed in cells that exposed and/or subjected them to the following.

26.    <u>Overcrowding</u>: Like the overwhelming majority of detainees in Brooklyn Central Booking, plaintiffs were held for a substantial number of hours or overnight in overcrowded jail cells that contained numerous detainees in close proximity to one another. The overcrowding was exacerbated by such things as the loud noise, unsanitary conditions, lack of sleeping space and extreme temperatures described below.

27.    <u>Inability to Sleep</u>: Plaintiffs, like the overwhelming majority of detainees in Brooklyn Central Booking, were prevented from sleeping in the police precincts where they were held after their arrests and before they were taken to Brooklyn Central Booking. Plaintiffs were then held overnight or for a substantial number of hours in Brooklyn Central Booking but were prevented from sleeping because they were not provided with beds, cots, pillows, blankets or bedding. Plaintiffs observed a few detainees sleep on the floor or on a small hard bench in the

8

cell. Sleep was also prevented by the City of New York's practice of leaving the lights on at all times, the loud noise, and the overcrowding in the cell.

28. _Inadequate Toilets_: The overcrowded cells in Brooklyn Central Booking contain only one toilet per cell. These toilets are covered with feces, urine and/or vomit, do not have toilet seats, are often clogged or backed-up, and are in an open area of the cell without privacy partitions. There is usually no toilet paper in the cell or, at most, one roll is provided and is quickly used up.

29. _Toiletries and Other Hygienic Materials_: In addition to being deprived of toilet paper, plaintiffs, like all other detainees, were not provided with toiletries or other hygienic materials such as soap, tissues, clean water, or a toothbrush and toothpaste.

30. _Inadequate Water and Meals_: Plaintiffs were not provided fresh, clean drinking water or adequate food. Plaintiffs were given one stale peanut butter and jelly or bologna sandwich, a carton of warm milk or juice and/or a small box of cereal, but were not given plastic utensils, paper plates or bowls, or napkins. Plaintiffs and many detainees feared consuming the paltry amount of food and milk provided because it may have resulted in them having to urinate or defecate and, as stated earlier, the toilets are effectively unusable.

31. _Extreme Temperatures and Inadequate Ventilation_: Plaintiffs were subjected to extremely cold or hot temperatures, or both, and shivered and/or sweated profusely. Moreover, there is no ventilation in the cells.

32. _Unsanitary Conditions_: Plaintiffs were held in cells in which there was garbage all over the floor as well as urine, feces, and/or vomit splattered in sections of the floor.

33. _Infestation_: Plaintiffs were held in cells which were infested with rodents and/or insects.

9

34.   <u>Crime</u>:  Plaintiffs were held in cells which were largely unsupervised and where the guards look the other way at fights, thefts and bullying.  Violent criminals charged with such crimes as murder, attempted murder, armed robbery and rape are held in the same cells as alleged minor offenders and these criminals often dominate the other detainees and control what occurs in the cells.

35.   <u>Substantial Risk of Harm</u>:  Plaintiffs were exposed to illness and/or physical harm from: (a) being in close proximity to numerous other detainees in overcrowded cells; (b) being exposed to insects and rodents, extreme temperatures, and unsanitary conditions including garbage, feces, urine and vomit; (c) being deprived of sleep, rest, adequate food, water, and the opportunity to clean themselves or wash their hands; and (d) being denied security and protection from other inmates by the municipal personnel employed in Brooklyn Central Booking.  Moreover, whenever detainees request medical treatment from the emergency medical technicians in the facility, the technicians, pursuant to a policy, practice or custom, discourage treatment by telling the detainees that treatment will result in a significant delay in the time that the detainee is brought before the judge for arraignment and released.

36.   The defendants and other municipal policymakers and supervisory personnel were made aware of the aforesaid unconstitutional conditions of confinement in Brooklyn Central Booking during the class period and at all relevant times (a) from their direct participation in the operation of the facility; (b) from their own observations; (c) from internal reports by municipal officials and employees; (d) from conversations with other municipal officials and employees; (e) from external reports and complaints including those from the Correctional Association of New York, the Legal Aid Society of New York, and Brooklyn Defender Services; (f) from complaints filed by detainees; (g) from reports by the media (*see.*

10

*e.g.,* http://blogs.villagevoice.com/runninscared/2012/10/a_guide_to_nypd.php;

http://gothamist.com/2007/12/27/an_unexpected_v.php;

http://gowanuslounge.blogspot.com/2007/12/brooklyn-jail-nightmare-one-womans.html;

http://50.56.218.160/archive/category.php?category_id=4&id=25412); and (h) from notices of

claim and prior lawsuits, including *Spinner, et al. v. City of New York, et al.*, CV 01 2715, CV 01

8264, CV 02 2899, CV 02 1039 (E.D.N.Y.), which was brought by two of the undersigned

lawyers and which was a constitutional challenge to the illegal conditions present in Brooklyn

Central Booking.

37.     The *Spinner* complaint alleged in relevant part as follows:

> While incarcerated at Brooklyn Central Booking, plaintiffs and numerous other arrestees were held in filthy, disease-ridden, overcrowded jail cells. These jail cells have been infested with rodents and roaches for years. Moreover, there is often human feces and excrement on the floor and on the single toilet that the numerous arrestees in a cell are forced to share without privacy. The toilet is clogged and overflows onto the floor. Toilet paper and bedding are nonexistent. There is no access to clean drinking water. Temperatures are in the extremes. Milk is stored in a refrigerator that is labeled as containing "biohazards." There are health officials present in the facility advising the arrestees to be tested for tuberculosis once they are released. Violent criminals roam without supervision. The guards assigned to Central Booking look the other way at these dangerous conditions, and either ignore or utter profanities to arrestees who seek their assistance.

38.     Despite having been made aware of the unconstitutional conditions of

Brooklyn Central Booking, the defendants and municipal policymakers and supervisory

personnel failed to adequately investigate the conditions of the facility and failed to take

adequate remedial action. Such remedial action should have included the following:

11

(a)  Limiting the number of detainees who are housed in the individual cells to prevent overcrowding;

(b)  Providing beds or cots, pillows, blankets and bedding to detainees;

(c)  Constructing several toilets in the cells with privacy partitions;

(d)  Arranging for the cells and toilets to be cleaned frequently and for toilet paper to be replaced;

(e)  Providing detainees with adequate food, bottled water, plastic utensils, paper dishware and napkins;

(f)  Providing detainees with toiletries and other hygienic materials including soap, tissues, clean water, and a toothbrush and toothpaste;

(g)  Constructing a modern climate control and ventilation system;

(h)  Implementing a strict insect and rodent control system;

(i)  Having NYPD personnel provide a constant watch over the detainees to prevent crime.

39.     Despite having been made aware of the unconstitutional conditions of Brooklyn Central Booking, the defendants and municipal policymakers and supervisory personnel failed to adequately train, supervise, monitor and discipline members of the NYPD and other municipal personnel who contribute to the unconstitutional conditions.

40.     By failing to adequately investigate and take adequate remedial action, the City of New York subjected plaintiffs and others similarly situated to a policy, practice and/or custom of unconstitutional conditions of confinement in Brooklyn Central Booking in violation of the Due Process Clause of the Fourteenth Amendment.

41.    By failing to adequately investigate and take adequate remedial action, Commissioner Raymond Kelly and the other individual defendants intentionally subjected plaintiffs and others similarly situated to unconstitutional conditions of confinement in Brooklyn Central Booking in violation of the Due Process Clause of the Fourteenth Amendment.

42.    By failing to adequately investigate and take adequate remedial action, Commissioner Raymond Kelly and the other individual defendants were deliberately indifferent to the unconstitutional conditions of confinement in Brooklyn Central Booking in violation of the Due Process Clause of the Fourteenth Amendment.

## DAMAGES

43.    Plaintiffs suffered damage as a result of defendants' actions. Plaintiffs suffered emotional distress, extreme discomfort, pain, illness, physical injuries, lack of sleep, lack of adequate nutrition and, in some cases, medical expenses.

## FIRST CLAIM

## (DEPRIVATION OF DUE PROCESS)

44.    Plaintiffs repeat the foregoing allegations.

45.    As described herein, the City of New York violated the Due Process Clause of the Fourteenth Amendment to the Constitution for subjecting plaintiffs and others similarly situated to a policy, practice and/or custom of unconstitutional conditions of confinement in Brooklyn Central Booking.

46.    As described herein, Commissioner Raymond Kelly and the other individual defendants violated the Due Process Clause of the Fourteenth Amendment to the Constitution for intentionally subjecting plaintiffs and others similarly situated to unconstitutional conditions of confinement in Brooklyn Central Booking and/or by being

13

deliberately indifferent to the unconstitutional conditions of confinement in Brooklyn Central Booking

47.    Accordingly, all of the defendants are liable to plaintiffs and others similarly situated for violating their rights under the Due Process Clause of the Fourteenth Amendment to the Constitution.

## SECOND CLAIM

## (FAILURE TO INTERVENE)

48.    Plaintiffs repeat the foregoing allegations.

49.    Commissioner Raymond Kelly and the other individual defendants had a reasonable opportunity to prevent the violation of plaintiffs' constitutional rights as described herein but they refused to intervene.

50.    Accordingly, the individual defendants are liable to plaintiffs and others similarly situated under the Fourteenth Amendment to the Constitution for failing to intervene to prevent the violation of plaintiffs' constitutional rights.

WHEREFORE, plaintiffs seek the following relief jointly and severally against the defendants:

a.    Class certification under Rules 23(b)(2) and (3);

b.    A judgment declaring that the conditions of Brooklyn Central Booking during the class period violated the Due Process Clause of the Fourteenth Amendment;

c.    An injunction removing the unconstitutional conditions present in Brooklyn Central Booking;

d.    Compensatory damages in an amount to be determined by a jury;

e.    Punitive damages in an amount to be determined by a jury;

14

f.      Attorney's fees and costs;

g.      Such other and further relief as the Court may deem just and proper.

DATED:      June 12, 2013

_____

RICHARD CARDINALE
Attorney at Law
26 Court Street, Suite # 1815
Brooklyn, New York 11242
(718) 624-9391
richcardinale@gmail.com (not for service)


MICHAEL HUESTON
Attorney at Law
16 Court Street, Suite # 3301
Brooklyn, New York 11241
(718) 246-2900
mhueston@nyc.rr.com (not for service)


ANDREW RENDEIRO
Attorney at Law
16 Court Street, Suite # 3301
Brooklyn, New York 11241
(718) 237-1900
asrendeiro@yahoo.com (not for service)

15