UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

GERMAIN CANO, ERIC CEPHUS, KEVIN DARNELL, PETER EPPEL, MICHAEL GLENN, DEBORAH GONZALEZ, TRAVIS GORDON, JACQUELINE GUARINO, KEITH JENNINGS, WESLEY JONES, JAHMEL LAWYER, GREGORY MAUGERI, MICHAEL MCGHEE, DMITRIY MILOSLAVSKIY, YVONNE MIND, STEVEN MODES, NAKAITA MOORE, KERRY SCOTT, PHILLIP SINGLETON, MICHAEL SPALANGO, RAYMOND TUCKER, NANCY VIGLIONE, ELLI VIKKI, individually and on behalf of a class of all others similarly situated,

**SECOND AMENDED CLASS ACTION COMPLAINT**

CV 13 3341 (WFK) (VVP)

Jury Trial Demanded

Plaintiffs,

-against-

THE CITY OF NEW YORK, POLICE COMMISSIONER RAYMOND KELLY, FIRST DEPUTY COMMISSIONER RAFAEL PINEIRO, CAPTAIN KENNETH KOBETITSCH, CAPTAIN WILLIAM TOBIN,

Defendants.

------------------------------------------------------------------------ x

**PRELIMINARY STATEMENT**

1. The named plaintiffs are individuals who were detained in Brooklyn Central Booking between their arrests and arraignments during the past three years. They bring this class action alleging that defendants violated 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment to the United States Constitution by subjecting them and others similarly situated to unconstitutional conditions of confinement in Brooklyn Central Booking. Plaintiffs seek class certification pursuant to Fed. R. Civ. P. 23, declaratory and injunctive relief pursuant to class certification under Rule 23(b)(2), money damages pursuant to class certification

under Rule 23(b)(3), attorney's fees and costs, and such other and further relief as the court deems just and proper.

## JURISDICTION & VENUE

2. This action is brought pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) and (c) because the City of New York is subject to personal jurisdiction in this District and because the acts in question occurred in this District.

## JURY TRIAL

4. Pursuant to Fed. R. Civ. P. 38, plaintiffs demand a jury trial.

## PARTIES

5. The named plaintiffs are individuals who were detained in Brooklyn Central Booking between their arrests and arraignments during the past three years.

6. The proposed class is all individuals who have been detained in Brooklyn Central Booking since June 12, 2010.

7. The City of New York is a municipal corporation organized under the laws of the State of New York. The City acted pursuant to a policy, practice and/or custom at all relevant times herein.

8. Raymond Kelly was the Commissioner of the New York City Police Department ("NYPD") from 1992 to 1994 and from January 2002 to the present. Kelly acted under color of state law and in his capacity as the Commissioner of the NYPD at all relevant times herein. Kelly is sued in his individual and official capacities.

9. Rafael Pineiro is a First Deputy Commissioner of the NYPD who supervised the operation of Brooklyn Central Booking from June 12, 2010 to the present. Pineiro acted under color of state law and in his capacity as a Deputy Commissioner of the NYPD at all relevant times herein. Pineiro is sued in his individual and official capacities.

10. Captains Kenneth Kobetitsch and William Tobin were the commanding officers of Brooklyn Central Booking from June 12, 2010 to the present. These defendants acted under color of state law and in their capacities as captains of the NYPD at all relevant times herein. These defendants are sued in their individual and official capacities.

## CLASS ACTION ALLEGATIONS

11. The named plaintiffs seek to represent a plaintiff class under Fed. R. Civ. P. 23 consisting of all individuals who have been detained in Brooklyn Central Booking since June 12, 2010 (three years from the date that this case was filed). This action is brought pursuant to Rules 23(a), (b)(2) and (b)(3). The class meets the requirements of Rule 23 as described below.

12. The members of the class are so numerous as to render joinder impracticable. Tens of thousands of individuals were confined in Brooklyn Central Booking during the class period. Moreover, thousands of these individuals are not aware that their constitutional rights have been violated, cannot afford an attorney, and/or are unable to retain an attorney on a contingency fee basis because many lawyers believe that any damage award would be too small to justify an individual lawsuit.

13. There are questions of law and fact common to the class. Such questions include but are not limited to:

(a) Whether the City of New York violated the Due Process Clause of the Fourteenth Amendment to the Constitution by subjecting plaintiffs and the members of the class to a policy, practice and/or custom of unconstitutional conditions of confinement in Brooklyn Central Booking;

(b) Whether Commissioner Raymond Kelly, First Deputy Commissioner Rafael Pineiro, Captain Kenneth Kobetitsch and Captain William Tobin violated the Due Process Clause of the Fourteenth Amendment to the Constitution by intentionally subjecting members of the class to unconstitutional conditions of confinement in Brooklyn Central Booking and/or by being deliberately indifferent to the unconstitutional conditions of confinement in Brooklyn Central Booking;

(c) Whether the defendants, municipal policymakers and supervisory personnel failed to investigate and remedy the unconstitutional conditions of confinement in Brooklyn Central Booking despite having been informed of the conditions;

(d) Whether the defendants, municipal policymakers and supervisory personnel failed to adequately train, supervise, monitor and discipline members of the NYPD and other municipal personnel who contributed to the unconstitutional conditions of confinement in Brooklyn Central Booking;

(e) Whether municipal policies, practices and procedures show that defendants were deliberately indifferent to the unconstitutional conditions of confinement in Brooklyn Central Booking.

14. The claims of the named plaintiffs are typical of those of the class. The named plaintiffs and the members of the class are seeking and will benefit from remedial and

monetary relief for violations of the Due Process Clause from being confined in Brooklyn Central Booking.

15. The named plaintiffs and the undersigned class counsel will fairly and adequately protect the interests of the class. The named plaintiffs have no conflicts with any class members and are genuinely interested in effectuating changes in the operation of Brooklyn Central Booking. Attorneys Richard Cardinale and Michael Hueston have been practicing civil rights law since 1995, were class counsel in a class action alleging illegal strip searches by the City of New York, and defended the State of New York and state officials in two significant class actions lawsuits. Attorney Andrew Rendeiro has been engaged in civil rights litigation with the City of New York for several years, is the past President of the Kings County Criminal Bar Association, and is a member of the Grievance Committee of the State of New York for the Second, Eleventh and Thirteenth Judicial Districts.

16. The plaintiff class should be certified pursuant to Rule 23(b)(2) because the defendants have acted or failed to act on grounds generally applicable to the class thereby making class-wide declaratory and injunctive relief appropriate.

17. The plaintiff class should be certified pursuant to Rule 23(b)(3) because a class action is superior to any other method for the fair and efficient adjudication of this legal dispute and because the questions of law or fact common to class members predominate over any questions affecting only individual members. Certifying a class involving tens of thousands of potential plaintiffs would promote judicial economy and individual lawsuits could lead to inconsistent results. Further, without class certification, the alleged constitutional violations would not be adjudicated as many of the potential class members do not possess the knowledge or resources to bring a lawsuit, and the relatively small amount of damages suffered by each

individual plaintiff decreases the likelihood of individual lawsuits.  Finally, plaintiffs' claims allege a single unconstitutional practice and there is a strong commonality of the violation and the harm, making class certification especially appropriate.

## STATEMENT OF FACTS

18. The following plaintiffs, after being arrested and processed in a New York City police precinct, were incarcerated in Brooklyn Central Booking to await arraignment:

(a)  GERMAIN CANO after being arrested on about December 15, 2012;

(b)  ERIC CEPHUS after being arrested on about June 20, 2013;

(c)  KEVIN DARNELL after being arrested on or about December 22, 2012;

(d)  PETER EPPEL after being arrested on or about January 21, 2013;

(e)  MICHAEL GLENN after being arrested on or about July 10, 2011;

(f)  DEBORAH GONZALEZ after being arrested on about January 10, 2013;

(g)  TRAVIS GORDON after being arrested on or about December 19, 2012;

(h)  JACQUELINE GUARINO after being arrested on or about January 17, 2012;

(i)  KEITH JENNINGS after being arrested on about July 23, 2013;

(j)  WESLEY JONES after being arrested on or about May 9, 2013;

(k)  JAHMEL LAWYER after being arrested on about July 23, 2013;

(l)  GREGORY MAUGERI after being arrested on or about May 4, 2012;

(m)  MICHAEL MCGHEE after being arrested on or about October 3, 2012 and February 19, 2013;

(n)  DMITRIY MILOSLAVSKIY after being arrested on or about February 17, 2013;

(o)  YVONNE MIND after being arrested on about April 17, 2013;

(p) STEVEN MODES after being arrested on or about October 25, 2011;

(q) NAKAITA MOORE after being arrested on or about May 4, 2012;

(r) KERRY SCOTT after being arrested on or about September 19, 2012;

(s) PHILLIP SINGLETON after being arrested on about July 23, 2013;

(t) MICHAEL SPALANGO after being arrested on or about March 13, 2013;

(u) RAYMOND TUCKER after being arrested on or about March 13, 2013;

(v) NANCY VIGLIONE after being arrested on or about November 1, 2011;

(w) ELLI VIKKI after being arrested on or about July 26, 2012.

19. The plaintiffs, on average, spent between ten and 24 hours in Brooklyn Central Booking.

20. Brooklyn Central Booking is owned by the City of New York and operated by the City of New York, Commissioner Raymond Kelly, First Deputy Commissioner Rafael Pineiro, Captain Kenneth Kobetitsch and Captain William Tobin.

21. While incarcerated in Brooklyn Central Booking, plaintiffs and the potential members of the class were housed in cells that exposed and subjected them to the following.

22. <u>Overcrowding</u>: Plaintiffs were held overnight or for a substantial number of hours in overcrowded jail cells that contained numerous detainees in close proximity to one another. The overcrowding was exacerbated by the loud noise, unsanitary conditions, lack of sleeping space and extreme temperatures described below.

23. <u>Deprivation of Sleep</u>: Although plaintiffs were held overnight or for a substantial number of hours in Brooklyn Central Booking, they were prevented from sleeping because defendants did not provide them with beds, cots, pillows, blankets or bedding. Plaintiffs

7

observed a few detainees sleep on the floor or on a small hard bench in the cell. Sleep was also prevented by the defendants' practice of leaving the lights on at all times and from the loud noise and overcrowding in the cells.

        24. <u>Unusable Toilets</u>: The overcrowded cells in Brooklyn Central Booking contain only one toilet per cell. These toilets are covered with feces, urine and/or vomit, do not have toilet seats, are often clogged or backed-up, and are in an open area of the cell without privacy partitions. There is usually no toilet paper in the cell or, at most, one roll is provided and quickly used up.

        25. <u>Extreme Temperatures and Poor Ventilation</u>: Plaintiffs were subjected to extremely cold or hot temperatures, or both, and shivered and/or sweated profusely while in the unventilated cells in the facility.

        26. <u>Sanitation and Garbage</u>: Plaintiffs were held in cells in which there was garbage strewn over the floor as well as urine, feces and/or vomit splattered in sections of the floor.

        27. <u>Infestation</u>: Plaintiffs were held in cells which were infested with rodents and/or insects.

        28. <u>Crime</u>: Plaintiffs were held in cells which were largely unsupervised and where the guards look the other way at fights, thefts and bullying. Violent criminals charged with such crimes as murder, attempted murder, armed robbery and rape are held in the same cells as alleged minor offenders and these criminals often dominate the other detainees and control what occurs in the cells.

29. <u>Lack of Toiletries and Other Hygienic Items</u>: In addition to being deprived of toilet paper, plaintiffs, like all other detainees, were not provided with toiletries or other hygienic materials such as soap, tissues, clean water, or a toothbrush and toothpaste.

30. <u>Inadequate Water and Meals</u>: Plaintiffs were not provided fresh, clean drinking water or adequate food. Plaintiffs were given one stale peanut butter and jelly or bologna sandwich, a carton of warm milk or juice and/or a small box of cereal, but were not given plastic utensils, paper plates or bowls, or napkins. Moreover, plaintiffs and many detainees could not consume the paltry amount of food and milk or juice provided because it would have resulted in them having to urinate or defecate and, as stated earlier, the toilets are unusable.

31. <u>Substantial Risk of Harm</u>: Plaintiffs were exposed to illness and/or physical harm from: (a) being in close proximity to numerous other detainees in overcrowded cells; (b) being exposed to insects and rodents, extreme temperatures, and unsanitary conditions including garbage, feces, urine and vomit; (c) being deprived of sleep, rest, adequate food, water, and the opportunity to clean themselves or wash their hands; and (d) being denied security and protection from other inmates by the municipal personnel employed in Brooklyn Central Booking. Moreover, whenever detainees request medical treatment from the emergency medical technicians in the facility, the technicians, pursuant to a policy, practice or custom, discourage treatment by telling the detainees that treatment will result in a significant delay in the time that the detainee is brought before the judge for arraignment and released.

32. The City of New York, Commissioner Raymond Kelly, First Deputy Commissioner Rafael Pineiro, Captain Kenneth Kobetitsch and Captain William Tobin, and other municipal policymakers and supervisory personnel were made aware of the aforesaid

n/a
n/a

unconstitutional conditions of confinement in Brooklyn Central Booking during the class period and at all relevant times: (a) from their direct participation in the operation of the facility; (b) from their own observations; (c) from internal reports by municipal officials and employees; (d) from conversations with other municipal officials and employees; (e) from external reports and complaints including those from the Correctional Association of New York, the Legal Aid Society of New York, and Brooklyn Defender Services; (f) from complaints filed by detainees; (g) from reports by the media (*see. e.g.,*

http://blogs.villagevoice.com/runninscared/2012/10/a_guide_to_nypd.php;

http://gothamist.com/2007/12/27/an_unexpected_v.php;

http://gowanuslounge.blogspot.com/2007/12/brooklyn-jail-nightmare-one-womans.html;

http://50.56.218.160/archive/category.php?category_id=4&id=25412); and (h) from notices of claim and prior lawsuits, including *Spinner, et al. v. City of New York, et al.*, CV 01 2715, CV 01 8264, CV 02 2899, CV 02 1039 (E.D.N.Y.), which was brought by two of the undersigned lawyers and which was a constitutional challenge to the illegal conditions present in Brooklyn Central Booking.

        33.    The complaint in *Spinner* alleged in relevant part as follows:

> While incarcerated at Brooklyn Central Booking, plaintiffs and numerous other arrestees were held in filthy, disease-ridden, overcrowded jail cells. These jail cells have been infested with rodents and roaches for years. Moreover, there is often human feces and excrement on the floor and on the single toilet that the numerous arrestees in a cell are forced to share without privacy. The toilet is clogged and overflows onto the floor. Toilet paper and bedding are nonexistent. There is no access to clean drinking water. Temperatures are in the extremes. Milk is stored in a refrigerator that is labeled as containing "biohazards." There are health officials present in the facility advising the arrestees to be

tested for tuberculosis once they are released. Violent criminals roam without supervision. The guards assigned to Central Booking look the other way at these dangerous conditions, and either ignore or utter profanities to arrestees who seek their assistance.

34.    Despite having been made aware of the unconstitutional conditions of Brooklyn Central Booking, which have existed for at least 25 years, the defendants and other municipal policymakers and supervisory personnel failed to adequately investigate the conditions of the facility and failed to take effective remedial action.  Such remedial action should have included the following:

(a)  Limiting the number of detainees who are housed in the individual cells to prevent overcrowding;

(b)  Providing beds or cots, pillows, blankets and bedding to detainees;

(c)  Constructing several toilets in the cells with privacy partitions;

(d)  Arranging for the cells and toilets to be cleaned frequently and for toilet paper to be replaced;

(e)  Providing detainees with adequate food, bottled water, plastic utensils, paper dishware and napkins;

(f)  Providing detainees with toiletries and other hygienic materials including soap, tissues, clean water, and a toothbrush and toothpaste;

(g)  Constructing a modern climate control and ventilation system;

(h)  Implementing a strict insect and rodent control system;

(i)  Having NYPD personnel provide a constant watch over the detainees to prevent crime.

35. Despite having been made aware of the unconstitutional conditions of Brooklyn Central Booking, the defendants and other municipal policymakers and supervisory personnel failed to adequately train, supervise, monitor and discipline members of the NYPD and other municipal personnel who contribute to the unconstitutional conditions.

36. By failing to adequately investigate and take effective remedial action, the City of New York intentionally subjected plaintiffs and others similarly situated to a policy, practice and/or custom of unconstitutional conditions of confinement in Brooklyn Central Booking in violation of the Due Process Clause of the Fourteenth Amendment.

37. By failing to adequately investigate and take effective remedial action, Commissioner Raymond Kelly, First Deputy Commissioner Rafael Pineiro, Captain Kenneth Kobetitsch and Captain William Tobin intentionally subjected plaintiffs and others similarly situated to unconstitutional conditions of confinement in Brooklyn Central Booking in violation of the Due Process Clause of the Fourteenth Amendment.

38. By failing to adequately investigate and take effective remedial action, Commissioner Raymond Kelly, First Deputy Commissioner Rafael Pineiro, Captain Kenneth Kobetitsch and Captain William Tobin were deliberately indifferent to the unconstitutional conditions of confinement in Brooklyn Central Booking in violation of the Due Process Clause of the Fourteenth Amendment.

**DAMAGES**

39. Plaintiffs suffered damage as a result of defendants' actions. Plaintiffs suffered emotional distress, extreme discomfort, pain, illness, physical injuries, sleep deprivation, nutritional deprivation and, in some cases, medical expenses.

## FIRST CLAIM

### (DEPRIVATION OF DUE PROCESS)

40. Plaintiffs repeat and reallege the foregoing allegations.

41. As described herein, the City of New York violated the Due Process Clause of the Fourteenth Amendment to the Constitution for subjecting plaintiffs and others similarly situated to a policy, practice and/or custom of unconstitutional conditions of confinement in Brooklyn Central Booking.

42. As described herein, Commissioner Raymond Kelly, First Deputy Commissioner Rafael Pineiro, Captain Kenneth Kobetitsch and Captain William Tobin violated the Due Process Clause of the Fourteenth Amendment to the Constitution for intentionally subjecting plaintiffs and others similarly situated to unconstitutional conditions of confinement in Brooklyn Central Booking and/or by being deliberately indifferent to the unconstitutional conditions of confinement in Brooklyn Central Booking.

43. Accordingly, all of the defendants are liable to plaintiffs and others similarly situated for violating their rights under the Due Process Clause of the Fourteenth Amendment to the Constitution.

## SECOND CLAIM

### (FAILURE TO INTERVENE)

44. Plaintiffs repeat and reallege the foregoing allegations.

45. Commissioner Raymond Kelly, First Deputy Commissioner Rafael Pineiro, Captain Kenneth Kobetitsch and Captain William Tobin had a reasonable opportunity to prevent the violation of plaintiffs' constitutional rights as described herein but they refused to intervene.

46. Accordingly, Commissioner Raymond Kelly, First Deputy Commissioner Rafael Pineiro, Captain Kenneth Kobetitsch and Captain William Tobin are liable to plaintiffs and others similarly situated under the Fourteenth Amendment to the Constitution for failing to intervene to prevent the violation of plaintiffs' constitutional rights.

WHEREFORE, plaintiffs seek the following relief jointly and severally against the defendants:

a. Class certification under Rules 23(b)(2) and (3);

b. A judgment declaring that the conditions of Brooklyn Central Booking during the class period violated the Due Process Clause of the Fourteenth Amendment;

c. An injunction removing the unconstitutional conditions present in Brooklyn Central Booking;

d. Compensatory damages in an amount to be determined by a jury;

e. Punitive damages in an amount to be determined by a jury;

f. Attorney's fees and costs;

g. Such other and further relief as the Court may deem just and proper.

DATED:   September 12, 2013

/s/

_____
RICHARD CARDINALE
Attorney at Law
26 Court Street, Suite # 1815
Brooklyn, New York 11242
(718) 624-9391
richcardinale@gmail.com (not for service)

MICHAEL HUESTON
Attorney at Law
16 Court Street, Suite # 3301
Brooklyn, New York 11241
(718) 246-2900
mhueston@nyc.rr.com (not for service)


ANDREW RENDEIRO
Attorney at Law
16 Court Street, Suite # 3301
Brooklyn, New York 11241
(718) 237-1900
asrendeiro@yahoo.com (not for service)