UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

GERMAIN CANO, ERIC CEPHUS, KEVIN DARNELL,
PETER EPPEL, MICHAEL GLENN, DEBORAH
GONZALEZ, TRAVIS GORDON, JACQUELINE
GUARINO, KEITH JENNINGS, WESLEY JONES,
JAHMEL LAWYER, GREGORY MAUGERI, MICHAEL
MCGHEE, DMITRIY MILOSLAVSKIY, YVONNE MIND,
STEVEN MODES, NAKAITA MOORE, KERRY SCOTT,
PHILLIP SINGLETON, MICHAEL SPALANGO,
RAYMOND TUCKER, NANCY VIGLIONE, ELLI VIKKI,
individually and on behalf of a class of all others similarly
situated,

**PLAINTIFFS' RESPONSES
TO DEFENDANTS' FIRST
SET OF
INTERROGATORIES
AND REQUEST FOR
PRODUCTION OF
DOCUMENTS**

13-cv-3341-WFK-VVP

Plaintiffs,

-against-

THE CITY OF NEW YORK, POLICE COMMISSIONER
RAYMOND KELLY, FIRST DEPUTY COMMISSIONER
RAFAEL PINEIRO, CAPTAIN KENNETH KOBETITSCH,
CAPTAIN WILLIAM TOBIN,

Defendants.

------------------------------------------------------------------------ X

## INTERROGATORIES

### Interrogatory 1:

Identify and provide contact information for any and all known members

of the proposed class in this action.

### Response to Interrogatory 1:

Plaintiffs object to this interrogatory insofar as it seeks information

remaining undisclosed in defendants' possession or control. Further, plaintiffs do not

know or claim to know the identifying information for every person who witnessed, was

present at, or has knowledge of the incident or claims.  Plaintiffs note that the information

requested in this Interrogatory is held by the City of New York or others not in plaintiffs' control.

Without waiving these objections, pursuant to Federal Rule Civil Procedure 33(d), plaintiffs refer defendants to the New York City Police Department and Kings County Criminal Court records in their cases. Criminal Procedure Law 160.50 releases and medical records releases have already been produced to defendants to obtain these records. Plaintiffs' contact information is provided on the medical releases.

**Interrogatory 2:**

Identify the precise amount of time each named Plaintiff spent in Brooklyn Central Booking, as alleged in paragraph "19" of the Complaint.

**Response to Interrogatory 2**:

Plaintiffs do not claim to know the precise amount of time each plaintiff spent in Brooklyn Central Booking. Plaintiffs note that information related to this Interrogatory is held by the City of New York or others not in plaintiffs' control. Pursuant to Federal Rule Civil Procedure 33(d), plaintiffs refer defendants to the New York City Police Department and Kings County Criminal Court records in their cases. Criminal Procedure Law 160.50 releases and medical records releases have already been produced to defendants to obtain these records. Without waiving these objections, plaintiffs were detained for approximately one day each.

**Interrogatory 3**:

For each condition alleged in paragraphs "22" through "31" of the Complaint, identify the precise condition to which each Plaintiff was subjected.

**Response to Interrogatory 3**:

Plaintiffs object to this Interrogatory insofar as it calls for a narrative response.   The information sought may be better obtained through an oral deposition. Fed. R. Civ. P. 26(b)(2) (information obtainable from another source).   Plaintiffs also object to this Interrogatory insofar as it seeks to limit damages and claims, or proof thereof, plaintiffs may seek.   Subject to these objections, plaintiffs answer as follows:

I.   Overcrowding

(a) GERMAIN CANO – Very crowded had to sit on the floor.  No bed.

(b)  ERIC CEPHUS – Very over crowded.  Had to stand or sit on the floor.

(c)  KEVIN DARNELL – Very crowded.  People were lying all over the floor.

(d)  PETER EPPEL – Very crowded.  Could not sit.  Had to stand because people were sleeping on the floor.

(e)  MICHAEL GLENN – Very overcrowded.  Rarely sat.  Stood most of the time.

(f)  DEBORAH GONZALEZ – Very crowded.  No space to sit on the bench.

(g)  TRAVIS GORDON – Very overcrowded.  I sat on the floor.

(h)  JACQUELINE GUARINO – Very overcrowded.

(i)  KEITH JENNINGS – Very overcrowded.  No space on the bench, so I sat on the floor or I stood.

(j)  WESLEY JONES – No seats. Stood or sat on the floor.

(k)  JAHMEL LAWYER – Very overcrowded.  People standing all over the place.

(l)  GREGORY MAUGERI – Very crowded.  Had to stand or sit on the floor.

(m)  MICHAEL MCGHEE – Very overcrowded.  If able to sit, it had to be on the floor.

(n)  DMITRIY MILOSLAVSKIY – It was overcrowded.  I could not sit on the floor until other individuals were moved to different cells.

(o)  YVONNE MIND – Very crowded.  Mostly sat on the floor.

(p)  STEVEN MODES – Very overcrowded. All benches were taken. No one would let me sit.

(q)  NAKAITA MOORE – Very crowded. Sometimes stood.

(r)  KERRY SCOTT – Overcrowded.  Had to stand or sit on the floor.

(s)  PHILLIP SINGLETON – Very crowded.  Twenty to 30 people in the cell with one bench.

(t)  MICHAEL SPALANGO – It was too crowded to sit on the floor or the bench.

(u)  RAYMOND TUCKER – Very crowded.  Barely a place to stand.

(v)  NANCY VIGLIONE – Very crowded.  One dirty bench filled with people.

(w)  ELLI VIKKI -    Forty Eight people in the space for 25.


II.    Deprivation of Sleep

(a)  GERMAIN CANO – Had to sit up on a hard wooden bench.  No sleep.

(b)  ERIC CEPHUS – Too crowded.  Nowhere to lie down.

(c)  KEVIN DARNELL – The lights were on constantly.  No sleep.  Often I was standing.

(d)  PETER EPPEL – I had to stand because people were sleeping on the floor.

4

(e)  MICHAEL GLENN – Ability to sleep, none.  So crowded I had to stand most of the time.

(f)  DEBORAH GONZALEZ – Barely had ability to sleep.  Nothing but floor space.

(g)  TRAVIS GORDON – Had to sleep on the floor a few feet away from the toilet.

(h)  JACQUELINE GUARINO – Filthy sticky blue mats were passed into the cell, but too few for everyone and no room to put them down.

(i)  KEITH JENNINGS – No ability to sleep.  People who had been there before used their own shoes wrapped in their own shirts to make pillows to sleep on the filthy floor.

(j)  WESLEY JONES – No mats, cots, pillows or blankets.  Only option is to curl up on the floor, but there are roaches and rodents.

(k)  JAHMEL LAWYER – Twenty to 30 men in one cell.  Two of them got to sleep on a bench. Everyone else stood or lied on the floor.

(l)  GREGORY MAUGERI – Had to stand or sit on the floor because one inmate took the bench and would not let anyone else on it.

(m)  MICHAEL MCGHEE – Three guys sleep on hard benches.  Everyone else on the floor or stood.

(n)  DMITRIY MILOSLAVSKIY – No ability to sleep, barely enough room to stand or sit on the floor.

(o)  YVONNE MIND – No beds.  Had to sit on a hard bench, or the floor or stand.

(p)  STEVEN MODES – No ability to sleep.  Had to sit on the floor.

(q)  NAKAITA MOORE – No ability to sleep, had to lean on a stranger's shoulder

or the wall while sitting to try to sleep.

(r)  KERRY SCOTT – Not able to sleep.

(s)  PHILLIP SINGLETON – Had to sit up on a bench.  No room to sleep.

(t)  MICHAEL SPALANGO – No ability to sleep.  Had to sit on the floor.

(u)  RAYMOND TUCKER – No ability to sleep.  The floor was cluttered with

people, some sleeping next to the urinal.

(v)  NANCY VIGLIONE – None.  There was one dirty bench and a few dirty,

sticky mats.

(w)  ELLI VIKKI – No space to sleep.  I just sat on the floor.


III.    Unusable Toilets and Lack of Toiletries and Other Hygienic Items

(a)  GERMAIN CANO – Toilets were filthy.  Metal units with black stains

around them, and I did not see any toiletries or toilet paper.  There was urine on

the floor and the smell was terrible.

(b)  ERIC CEPHUS – Toilets were filthy.  There were feces and urine on the bowl

and urine on the floor.  There were no toiletries, and one roll of toilet paper on the

floor next to the toilet but it was wet with urine.

(c)  KEVIN DARNELL – Toilet was disgusting.  It was a steel blow with no seat

and a small partition.  There was urine and feces on the floor.  No toiletries, and

one roll of toilet paper being used by an inmate as a pillow.

(d)  PETER EPPEL – One filthy toilet in the middle of the room with urine and

feces in it and around it, and no one came to clean. There were no toiletries or toilet paper.

(e) MICHAEL GLENN – One filthy open toilet that smelled terribly and had no privacy. There were feces stains on the toilet and urine on the floor. There were no toiletries and we had to ask the guards for toilet paper.

(f) DEBORAH GONZALEZ - There were pads everywhere, vomit on the floor near the toilets. No toiletries or toilet paper.

(g) TRAVIS GORDON – The toilet was filthy and overflowing. Feces and urine spilled to the floor. Someone had vomited in the cell. There was limited toilet paper. No toiletries and no staff came to clean the mess.

(h) JACQUELINE GUARINO – The toilet had stains on it. There was no seat, no toilet paper, and no toiletries.

(i) KEITH JENNINGS – The toilet was overflowing with urine spilled out onto the floor. Someone had smeared feces on the wall. There were no toiletries, and a homeless man took the roll of toilet paper so no one else was able to use it.

(j) WESLEY JONES – The toilet had feces and urine all over it. There were no walls or privacy.

(k) JAHMEL LAWYER – People had poured milk into the toilet and it smelled very bad. It had feces, urine and vomit in and around it. I did not see any toiletries or toilet paper.

(l) GREGORY MAUGERI – The toilets were disgusting. There were feces and urine on the floor. Flies were flying around the toilet. There were no toiletries or toilet paper provided.

(m)  MICHAEL MCGHEE – Toilets were overflowing and within 10 to 15 feet of me at all times.  Feces and urine spilled out.  There were no toiletries, and the only toilet paper was dirty from the overflow.

(n)  DMITRIY MILOSLAVSKIY – There was no way to use the toilets in the cells I was in.  They were both out of order.  There was feces and urine on the floor, and it smelled terrible.  There was one roll of toilet paper but someone stuffed it in the toilet, clogging it.

(o)  YVONNE MIND – The toilet was nasty, overflowing and smelled horrible.  Toilet water overflowed onto the floor.  There were no toiletries and one roll of toilet paper was somewhere in the cell.

(p)  STEVEN MODES – The toilet was horrible.  It had no seat. Some people just used the floor.  There was a urine puddle all around it.  There were no toiletries or toilet paper.

(q) NAKAITA MOORE – There were no toiletries or toilet paper, but I had to use the toilet so I squatted over the bowl and closed my eyes so I did not have to see what the other inmates told me was there.

(r)  KERRY SCOTT – Can't use the toilet because it was stuffed with paper, food and overflowed when flushed. There were no toiletries and the toilet paper was wet.

(s)  PHILLIP SINGLETON – There were feces in the toilet and urine on the floor around the bowl.  There were no toiletries and no toilet paper.

(t)  MICHAEL SPALANGO – Toilet was a steel bowl with no seat, overflowing with feces and urine.  There were no toiletries or toilet paper.

(u)  RAYMOND TUCKER – The toilet was filled with urine and feces, some overflowed onto the floor.  I did not see the toilet paper and there were no toiletries.

(v)  NANCY VIGLIONE – The toilet was gross. Vomit, feces and urine were in the toilet and around it on the floor.

(w)  ELLI VIKKI – The toilet was disgusting.  It was unclean and caked with feces and the smell was unbearable.  One roll of toilet paper was provided for the cell, but there were no other toiletries.


IV.    Extreme Temperatures and Poor Ventilation

(a)  GERMAIN CANO – It was very hot in the cell.  There was no fresh air and it smelled terrible, dirty like urine.

(b)  ERIC CEPHUS – It was much too hot and humid in the cell.  It was very stuffy.  There were no windows.

(c)  KEVIN DARNELL – It was freezing, extremely cold.  There was no heat, no windows and no fresh air.

(d)  PETER EPPEL – It was very cold, and it smelled like a men's room. There was no fresh air.

(e)  MICHAEL GLENN – One cell was very cold.  The next cell was so packed that it was hot and humid. There was a homeless man in one of the cells, so it smelled very bad.  There was no fresh air.

(f)  DEBORAH GONZALEZ – It smelled very bad.  There were no windows and no fresh air.

(g)  TRAVIS GORDON – It was too cold in the cells.  It stunk in there.  There was no fresh air anywhere.

(h)  JACQUELINE GUARINO – It was very hot and smelled like an old dirty bathroom.  There was no ventilation.

(i)  KEITH JENNINGS – It was very cold, overcrowded and stuffy in there.

(j)  WESLEY JONES – It was freezing.  There was no ventilation.  I was shivering.

(k)  JAHMEL LAWYER -  There were no windows and it smelled very bad.  The cells were too cold, but so many people were crowded in that it became smelly and stuffy.

(l)  GREGORY MAUGERI – It was ice cold. There were no windows for fresh air and it was very crowded.

(m)  MICHAEL MCGHEE – It was extremely cold, and the very first thing I noticed was the incredible stench when I was brought in.

(n)  DMITRIY MILOSLAVSKIY – Central Booking was stuffy with very poor ventilation.  It smelled bad.

(o)  YVONNE MIND – It was very hot and humid.  It smelled terrible.  There was no ventilation for fresh air.

(p)  STEVEN MODES – It was very hot, stuffy, and sweaty.  The place smelled bad like urine, and there was no ventilation.

(q)  NAKAITA MOORE – It was very cold even though the windows were closed.  There was no fresh air at all.

(r)  KERRY SCOTT – It was very hot and uncomfortable.  There were above normal temperatures.

(s)  PHILLIP SINGLETON – It was too cold, like Alaska.  It smelled really bad.  No fresh air. No open windows.

(t)  MICHAEL SPALANGO – It was very hot and stuffy.  There were no vents or windows.

(u)  RAYMOND TUCKER – It was very hot, humid and damp.  There were no windows or fans.  There was no ventilation.

(v)  NANCY VIGLIONE – It was freezing.  There was a horrible stale smell and no ventilation.

(w)  ELLI VIKKI –  It was stifling hot.  There was no ventilation.  No fans, no windows, and no air conditioning.


V.     Sanitation, Garbage and Infestation

(a)  GERMAIN CANO – The cell was filled with old clothes, saliva on the floor, food wrappers, cigarette butts, fruit flies and roaches.

(b)  ERIC CEPHUS – I saw milk cartons, plastic condiment wrappers, old food, insects and roaches.

(c)  KEVIN DARNELL – I saw used toilet paper, food wrappers, banana peels on the floor, mice or small rats walking over the box that contained our sandwiches before they were passed out.

(d)  PETER EPPEL – There were flies and small insects in the cell and old used food wrappers, milk cartons, food, and dirty paper on the floor.

11

(e)  MICHAEL GLENN -- The cell was filthy.  It had old food, paper cups and milk containers on the ground, and I saw flying insects, mice and roaches crawling around.

(f)  DEBORAH GONZALEZ – There was lots of garbage on the floor, lots of sandwiches thrown on the floor by the inmates.  I saw mice and water bugs in the cell.

(g)  TRAVIS GORDON – Someone poured juice on the floor in the cell.  There was also old food and food wrappers, roaches, rats and other small insects.

(h)  JACQUELINE GUARINO – On the floor in the cell someone's hair weave piece and fake finger nails were on the floor, along with cigarette butts, old food, food wrappers, and rotten fruit.  I saw roaches and rats and in the cell and in the hallways.

(i)  KEITH JENNINGS – There were gnats flying around, mice crawling and small bugs that I thought were bed bugs.  Someone smeared feces on the floor, and there were many oranges and orange peels thrown about the cell.

(j)  WESLEY JONES – Food and garbage on the floor, papers thrown about, and milk cartons on the floor.

(k)  JAHMEL LAWYER – There was all kinds of food debris and milk containers on the floor.  I saw flies and roaches in the cell.

(l)  GREGORY MAUGERI – There were milk containers, gum wrappers, cigarette butts, used paper cups, and old orange peels on the floor.  I saw roaches, flies and water bugs in the cell.

(m) MICHAEL MCGHEE – There was all types of food and wrappers on the floor, along with someone's used toilet paper on the ground. I saw roaches and mice in the cell.

(n) DMITRIY MILOSLAVSKIY – There were cereal boxes, cereal, milk containers and other food debris on the floor. I saw flies and roaches in the cell.

(o) YVONNE MIND – There was food debris, paper, spilled water and juice on the floor. The cell was very dirty. I saw flies and roaches in the cell.

(p) STEVEN MODES – There was trash, food, pieces of clothing, and one condom wrapper in the extremely dirty cell. I remember seeing roaches.

(q) NAKAITA MOORE – There was a lot of food, food wrappers, and milk cartons on the floor of the cell. I saw mice and water bugs.

(r) KERRY SCOTT – There was trash in the cells, sandwiches, left over food and fruit. I saw both rodents and insects and lot of flies.

(s) PHILLIP SINGLETON – Someone smeared their peanut butter and jelly sandwich on the wall. Others just threw their food on the floor, along with spilled milk and containers. I saw roaches flies and gnats in the cell.

(t) MICHAEL SPALANGO – There was used toilet paper, old food, and cigarette butts in the cell. I saw roaches, mice and flies.

(u) RAYMOND TUCKER – There was food, paper cups and other trash in the cell. I saw roaches spiders and other insects.

(v) NANCY VIGLIONE – There were cigarette butts, food wrappers, bread crust, bananas and banana peels on the floor, along with used toiler paper and roaches. I saw rats coming up to the cell to hide near the radiator.

(w) ELLI VIKKI – There was food, sandwiches and cereal boxes on the floor. I saw mice and flies in the cell.

VI.   Inadequate Water and Meals

(a) GERMAIN CANO – They served nasty, stale peanut butter and jelly sandwiches and we had to drink water from the sink next to the toilet.

(b) ERIC CEPHUS – Stale bread and peanut butter and jelly sandwiches were served with warm milk cartons. There was a water cooler sitting on the floor, five feet away from the filthy toilet.

(c) KEVIN DARNELL – They offered stale bread with a piece of cheese of some kind. I don't remember being served anything to drink.

(d) PETER EPPEL – They offered milk and sandwiches. I observed people spitting both out to the floor. There was no drinking water. When I asked for some they handed me a warm container of milk.

(e) MICHAEL GLENN – There was no clean water in the cells. When someone asked for some, half the time a small paper cup was handed into the cell. The food was disgusting. No one ate it. It looked like old baloney sandwiches and the container of milk was not cold.

(f) DEBORAH GONZALEZ – The food was hard bread and some kind of cheese and the only water came from the sink next to the toilet.

(g) TRAVIS GORDON – There was water in a basin on the floor for us to drink, and stale sandwiches were passed out. I did not eat one.

(h) JACQUELINE GUARINO – For water we had to reach outside the bars to a sink in the hallway. The sandwich they passed out was stale. I did not eat it.

(i) KEITH JENNINGS – They passed out cheese sandwiches, which were just old bread with cheese stuck to it. For water they placed a water cooler on the floor. The outside of the cooler was dirty.

(j) WESLEY JONES – Peanut butter and jelly sandwiches were passed out. There was no water, but warm milk containers were passed out.

(k) JAHMEL LAWYER – Water was from a sink near the toilet, but someone had spit in the sink, so it was unusable. They passed out very old looking peanut butter and jelly sandwiches and milk containers, which were not cold.

(l) GREGORY MAUGERI – They gave us baloney sandwiches and oranges. The orange was sour so I threw it out. The baloney sandwich looked disgusting. I did not eat it. Water was from a cooler placed on the dirty floor.

(m) MICHAEL MCGHEE – They passed out sandwiches. My bread was molded. Water was from the sink near the toilet, but the sink was clogged, so it was unusable.

(n) DMITRIY MILOSLAVSKIY – No food or drink was offered for the first fifteen hours, then bread and cheese sandwiches were passed out just before we saw the judge. There was no drinking water.

(o) YVONNE MIND – There was no drinking water. They passed out warm milk and sandwiches that were either peanut butter or a very dry cheese.

(p) STEVEN MODES – There was no kosher food at all. Nobody offered us clean drinking water.

(q) NAKAITA MOORE – Cheese sandwiches were served, but they looked really bad. If we wanted water, we had to reach to the sink the hallway to get a cup of water.

(r) KERRY SCOTT – The food was really bad. The meat looked like it had mold. The bread looked stale. The milk was warm. For water they handed us a pitcher and put it on the floor with paper cups.

(s) PHILLIP SINGLETON - The food was nasty and the only water was sitting in a large container on the dirty floor.

(t) MICHAEL SPALANGO – They gave us baloney and cheese sandwiches on stale bread. No drinking water was provided even though I asked.

(u) RAYMOND TUCKER – The food was a disgusting stale cheese sandwich. There was no water. The officer said that they had run out of water.

(v) NANCY VIGLIONE – They gave us a sandwich consisting of hard bread with a piece of cheese. No water was provided to our cell, but the cell across the room was able to reach to a sink in the hallway to get water into their cell.

(w) ELLI VIKKI – They gave us tasteless baloney sandwiches that few people tasted, but nobody finished. For water they put a water cooler with a spout on it on the floor, but the spout was only inches from the filthy floor.


VII.   Substantial Risk of Harm and Crime

(a) GERMAIN CANO – Inmates were yelling and threatening each other throughout the day.

16

(b)  ERIC CEPHUS – One inmate threatened physical harm to another because he wanted the first to make room for him to sit on the floor.

(c)  KEVIN DARNELL – When I asked the officers if I can call my wife, the officer responded: *What they fuck do you think this is a hotel?  Sit the fuck down.* There was a lot of angry gesturing and complaining by the inmates.  The officers did not intervene at all.

(d)  PETER EPPEL – One inmate told me that I had to give him money or he would kill me.  There was a lot of arguing among the inmates in the cell.  A different inmate had marijuana and smoked it in the cell, but all the officers did was say if they catch who has it they will be delayed seeing the judge.

(e)  MICHAEL GLENN – I felt endangered as soon as I got to Central Booking. It was very intimidating.  It was obvious which inmates were in control of each cell I was in.

(f)  DEBORAH GONZALEZ -  It was very tense in the cells.  People were agitated, arguing and threatening each other loudly.

(g)  TRAVIS GORDON – One of the guys in my cell got jumped by two other guys, and the officers did nothing about it until the victim's screams went on too long.

(h)  JACQUELINE GUARINO – I was personally threatened by another inmate because I did not get up to get that inmate water when she demanded that I get it for her.  The guards did not intervene.  I was very frightened.

(i)  KEITH JENNINGS – One inmate leaned against another while they were sleeping and a fight broke out everyone was very afraid.

17

(j)  WESLEY JONES – A fight occurred in my cell and no guards came to help.

(k)  JAHMEL LAWYER – Two guys were fighting in the cell and the officers took almost five minutes to beak it up and get one guy out of there.

(l)  GREGORY MAUGERI –There was a fight in my cell.  The fight ended.  No officers ever came by.

(m)  MICHAEL MCGHEE – There was a high degree of danger.  There were several arguments among the inmates and pushing and jostling over where to sit on the floor.

(n)  DMITRIY MILOSLAVSKIY – It was very frightening.  One inmate was smoking what appeared to be crack in the cell, guards yelled over a loud speaker: *If we see who's doing that we are going to come over*.

(o)  YVONNE MIND – I was looked at in a threatening manner by other inmates.  It was very frightening.  There was no protection from the guards.

(p)  STEVEN MODES – I was called a Jew by the other inmates.  While I was sitting on the floor, one of the inmates sitting on the bench continuously kicked me in the back of my head.  It was very frightening.  I felt in great danger.  The guards did not help at all.

(q) NAKAITA MOORE – I saw other girls fighting and arguing with each other, and the guards did not come by quickly to help.  I felt very afraid.

(r) KERRY SCOTT – There were threats by inmates to each other.  I felt in danger often.

(s) PHILLIP SINGLETON – Inmates were cursing and yelling at each other.  It looked like a fight would start anytime.

(t) MICHAEL SPALANGO – Inmates argued and cursed at each other. The guards did nothing about it. One inmate in particular made threatening gestures and remarks to me and others in the cell.

(u) RAYMOND TUCKER – An inmate threatened me that if I did not give him change to use the payphone that he would hurt me. When I complained to the officers, the inmate warned me that if I complain that he will see me there tomorrow and that I would never go home. That inmate and a few others made racial slurs to me and additional threats to my safety.

(v) NANCY VIGLIONE – I was very threatened and intimidated. A few of the inmates were calling me whitey or schoolteacher. There was no guard supervision at all.

(w) ELLI VIKKI – One woman had a wig on with drugs hidden in it. It was a disgusting dangerous place.

**Interrogatory 4**:

For each Plaintiff who was subjected to any conditions alleged in paragraphs "22" through "31" of the Complaint, identify any and all physical injuries sustained as a result of those conditions and identify which condition allegedly caused such injuries.

**Response to Interrogatory 4**:

Plaintiffs object to this Interrogatory insofar as it calls for a narrative response. The information sought may be better obtained through an oral deposition. Plaintiffs also object to this Interrogatory insofar as it seeks to limit damages and claims, or proof thereof, plaintiffs may seek. Subject to these objections, and as a non-exclusive

statement of compensable injuries, plaintiffs' emotional injuries include emotional distress, anxiety, fear, embarrassment, a loss of privacy and humiliation.  Plaintiff also sustained injuries from threats of physical harm, and suffered hunger pains, pain and discomfort from not being able to use the toilet, and pain and discomfort from not being able to sit or lie down.  Plaintiffs also refer defendants to their response to this Interrogatory 3 Part VII, which discusses being exposed to a substantial risk of harm and crime.

**Interrogatory 5**:

For each Plaintiff who was subjected to overcrowding, as alleged in paragraph "22" of the Complaint, identify the cell in which that Plaintiff was housed and the number of detainees housed in that cell.

**Response to Interrogatory 5**:

Plaintiffs object to this Interrogatory insofar as it seeks information remaining undisclosed in defendants' possession or control.  Further, plaintiffs do not know or claim to know all the cells in which they were housed and the number of detainees housed in each cell.  Plaintiffs note that this information is held by the City of New York or others not in plaintiffs' control.

**Interrogatory 6**:

For each Plaintiff who was deprived of sleep, as alleged in paragraph "23" of the Complaint, state the precise number of hours for which that Plaintiff was unable to sleep.

**Response to Interrogatory 6**:

Plaintiffs object to this Interrogatory insofar as it is duplicative. Plaintiffs are not claiming to know the precise amount of hours of sleep they were deprived. Plaintiffs also object to this Interrogatory insofar as it seeks to limit damages or claims, or proof thereof, plaintiffs may seek. Subject to these objections, plaintiffs refer defendants to their response to Interrogatory 3 Part II, which discusses deprivation of sleep.

**Interrogatory 7**:

For each Plaintiff who was unable to use the toilets, as alleged in paragraph "24" of the Complaint, state the number of hours such a toilet was unusable and the precise reason the toilet could not be used.

**Response to Interrogatory 7:**

Plaintiffs object to this Interrogatory insofar as it is duplicative. Plaintiffs are not claiming to know the precise amount of hours a toilet was unusable. Plaintiffs also object to this Interrogatory insofar as it seeks to limit damages or claims, or proof thereof, plaintiffs may seek. Subject to these objections, plaintiffs refer defendants to their response to Interrogatory 3 Part III, which discusses unusable toilets and lack of toiletries and other hygienic items.

**Interrogatory 8**:

For each Plaintiff who was unable to use the toilets, as alleged in paragraph "24" of the Complaint, identify and describe the physical appearance, including gender, race, approximate height and weight, hair color, presence of eyeglasses or facial hair, and any other distinguishing physical characteristics, of any individuals whom he notified about the unusable toilet.

**Response to Interrogatory 8:**

Plaintiffs object to this Interrogatory insofar as it calls for a narrative response. The information sought may be better obtained through an oral deposition. Subject to these objections, plaintiffs refer defendants to their response to Interrogatory 3 Part III, which discusses unusable toilets and lack of toiletries and other hygienic items.

**Interrogatory 9**:

For each Plaintiff who was "subjected to extremely cold or hot temperatures, or both," as alleged in paragraph "25" of the Complaint, state the approximate temperature(s) each Plaintiff was subjected to and the amount of time such temperature condition(s) lasted.

**Response to Interrogatory 9:**

Plaintiffs object to this Interrogatory insofar as it is duplicative. Plaintiffs are not claiming to know the approximate temperature(s) each plaintiff was subjected to and the amount of time such temperature condition(s) lasted. Plaintiffs also object to this Interrogatory insofar as it seeks to limit damages or claims, or proof thereof, plaintiffs may seek. Subject to these objections, plaintiffs refer defendants to their response to Interrogatory 3 Part IV, which discusses extreme temperatures and poor ventilation.

**Interrogatory 10**:

For each Plaintiff who was "held in cells in which there was garbage strewn over the floor as well as urine, feces and/or vomit splattered in sections of the floor," as alleged in paragraph "26" of the Complaint, state the precise condition of each Plaintiff's cell and the amount of time such condition lasted.

**Response to Interrogatory 10:**

Plaintiffs object to this Interrogatory insofar as it is duplicative. Plaintiffs also object to this Interrogatory insofar as it calls for a narrative response. The information sought may be better obtained through an oral deposition. Plaintiffs are not claiming to know the precise condition of each Plaintiff's cell and the amount of time such condition lasted. Plaintiffs also object to this Interrogatory insofar as it seeks to limit damages or claims, or proof thereof, plaintiffs may seek. Subject to these objections, plaintiffs refer defendants to their response to Interrogatory 3 Part V, which discusses sanitation, garbage and infestation.

**Interrogatory 11:**

For each Plaintiff who was held in a cell "infested with rodents and/or insects," as alleged in paragraph "27" of the Complaint, state the precise nature of the infestation (e.g., "mice" or "cockroaches"), the period of time for which the Plaintiff was subjected to such conditions, and the number of "rodents and/or insects" observed by each Plaintiff.

**Response to Interrogatory 11:**

Plaintiffs object to this Interrogatory insofar as it is duplicative. Plaintiffs object to this Interrogatory insofar as it calls for a narrative response. The information sought may be better obtained through an oral deposition. Plaintiffs are not claiming to know the precise nature of the infestation (e.g., "mice" or "cockroaches"), the period of time for which the Plaintiff was subjected to such conditions, and the number of "rodents and/or insects" observed by each Plaintiff. Plaintiffs also object to this Interrogatory insofar as it seeks to limit damages or claims, or proof thereof, plaintiffs may seek.

23

Subject to these objections, plaintiffs refer defendants to their response to Interrogatory 3 Part V, which discusses sanitation, garbage and infestation.

**Interrogatory 12:**

For each Plaintiff who was held in a cell that was "largely unsupervised and where the guards look the other way at fights, thefts and bullying," as alleged in paragraph "28" of the Complaint, identify the "criminals" who "often dominate the other detainees and control what occurs in the cells," and state the precise nature of any threats directed at any plaintiff, and include a list of physical injuries suffered by each Plaintiff as a result of this alleged condition.

**Response to Interrogatory 12:**

Plaintiffs object to this Interrogatory insofar as it is duplicative. Plaintiffs object to this Interrogatory insofar as it calls for a narrative response. The information sought may be better obtained through an oral deposition. Plaintiffs are not claiming to know the identities of the "criminals" who "often dominate the other detainees and control what occurs in the cells". Plaintiffs also object to this Interrogatory insofar as it seeks to limit damages or claims, or proof thereof, plaintiffs may seek. Subject to these objections, plaintiffs refer defendants to their response to Interrogatory 3 Part VII, which discusses substantial risk of harm and crime.

**Interrogatory 13:**

For each Plaintiff who was "not provided with toiletries or other hygienic materials such as soap, tissues, clean water, or a toothbrush and toothpaste," as alleged in paragraph "29" of the Complaint, identify which items were not provided to each Plaintiff and the length of time for which such a deprivation occurred.

**Response to Interrogatory 13**:

Plaintiffs object to this Interrogatory insofar as it is duplicative.  Plaintiffs object to the Interrogatory insofar as it calls for a narrative response.  The information sought may be better obtained through an oral deposition.  Plaintiffs also object to this Interrogatory insofar as it seeks to limit damages or claims, or proof thereof, plaintiffs may seek.  Subject to these objections, plaintiffs refer defendants to their response to Interrogatory 3 Part III, which discusses unusable toilets and lack of toiletries and other hygienic items.

**Interrogatory 14:**

For each Plaintiff who "could not consume the paltry amount of food and milk and juice provided because it would have resulted in them having to urinate or defecate," as alleged in paragraph "30" of the Complaint, identify the individuals who did not consume the food, milk, and juice, and identify which food, milk, and juice they did not consume, and the times at which such food, milk, and juice were provided to them.

**Response to Interrogatory 14**:

Plaintiffs object to this Interrogatory insofar as it is duplicative.  Plaintiffs object to this Interrogatory insofar as it calls for a narrative response.  The information sought may be better obtained through an oral deposition.  Plaintiffs also object to this Interrogatory insofar as it seeks to limit damages, or proof thereof, plaintiffs may seek. Subject to these objections, plaintiffs refer defendants to their response to Interrogatory 3 Part VI, which discusses inadequate water and meals.

**Interrogatory 15:**

For each Plaintiff who was "exposed to illness and/or physical harm," as alleged in paragraph "31" of the Complaint, identify the nature of the illness and physical harm that Plaintiff was exposed to and the duration of the illness or physical harm to which that Plaintiff was subjected.

**Response to Interrogatory 15:**

Plaintiffs object to this Interrogatory insofar as it is duplicative. Plaintiffs object to this Interrogatory insofar as it calls for a narrative response. The information sought may be better obtained through an oral deposition. Plaintiffs also object to this Interrogatory insofar as it seeks to limit damages or claims, or proof thereof, plaintiffs may seek. Subject to these objections, plaintiffs refer defendants to their response to Interrogatory 3.

**Interrogatory 16:**

Identify each Plaintiff who requested "medical treatment from the emergency medical technicians in the facility" as alleged in paragraph "31" of the complaint, and further identify the date and time such medical treatment was requested, and the medical condition that prompted each request for treatment.

**Response to Interrogatory 16:**

Pursuant to Federal Rule Civil Procedure 33(d), plaintiffs refer defendants to the New York City Police Department and Kings County Criminal Court records in their cases. Criminal Procedure Law 160.50 releases and medical records releases have already been produced to defendants to obtain their records of their intake interviews. Plaintiffs refer defendants to their response to Interrogatory 3 Part VII, which discusses

substantial risk of harm and crime.  Plaintiffs have no further information in response to this Interrogatory.

**Interrogatory 17:**

Identify with specificity any "external reports and complaints" concerning the alleged conditions at Brooklyn Central Booking referenced in section (e) of paragraph "32" of the Complaint.

**Response to Interrogatory 17**:

Plaintiffs objects to this Interrogatory  insofar as it requests descriptions of documents from individuals not in their control or remaining undisclosed in the custody, control or possession of the individual defendants or the City of New York.  Without waiving these objections, plaintiffs refer defendants to:

http://blogs.villagevoice.com/runninscared/2012/10/a_guide_to_nypd.php;

http://gothamist.com/2007/12/27/an_unexpected_v.php;

http://gowanuslounge.blogspot.com/2007/12/brooklyn-jail-nightmare-one-womans.html;

http://50.56.218.160/archive/category.php?category_id=4&id=25412; notices of claim, and prior lawsuits, including *Spinner, et al. v. City of New York, et al.*, CV 01 2715, CV 01 8264, CV 02 2899, CV 02 1039 (E.D.N.Y.).   Plaintiffs have no further information in response to this Interrogatory.

**Interrogatory 18:**

For each Plaintiff who suffered "emotional distress, extreme discomfort, pain, illness, physical injuries, sleep deprivation, nutritional deprivation and, in some cases, medical expenses," as alleged in paragraph "39" of the Complaint, state the precise nature of the damage or injury suffered, and identify any doctors, nurses, psychiatrists,

psychologists, therapists, counselors (including preventative services counselors), or social workers from whom that Plaintiff sought or received evaluation or treatment for injuries allegedly sustained as a result of Defendants' conduct as alleged in the Complaint. For each person identified, please complete, sign, and return a HIPAA-compliant release authorizing Defendants' counsel to obtain that Plaintiff's medical and/or mental health records, to the extent not already provided.

**Response to Interrogatory 18**:

Plaintiffs object to this Interrogatory insofar as it calls for a narrative response. The information sought may be better obtained through an oral deposition. Plaintiffs also object to this Interrogatory insofar as it seeks to limit damages or claims, or proof thereof, plaintiffs may seek. Subject to these objections, and as a non-exclusive statement of compensable injuries, plaintiffs' emotional injuries include emotional distress, anxiety, fear, embarrassment, a loss of privacy and humiliation. Plaintiffs also refer defendants to their response to Interrogatory 3 Part VII, which discusses the physical harm suffered by the plaintiffs that resulted from being exposed to a substantial risk of harm and crime. Plaintiffs are not claiming they sought medical treatment.

**Interrogatory 19:**

To the extent not identified in response to Interrogatory No. 16 above, for each Plaintiff, identify each and every medical or mental health professional, including but not limited to any doctors, nurses, psychiatrists, psychologists, therapists, counselors (including preventative services counselors), or social workers from whom that Plaintiff sought or received evaluation or treatment, from the date of the alleged injuries to the present time, for every physical and emotional injury alleged in the Complaint. For each

person identified, please complete, sign, and return a HIPAA-compliant release authorizing Defendants' counsel to obtain that Plaintiff's medical and/or mental health records, to the extent not previously provided.

**Response to Interrogatory 19**:

There is no information responsive to this Interrogatory.

**Interrogatory 20:**

For each Plaintiff, identify each and every document, including any handwritten or typewritten notes, emails, Facebook or other social networking posts, letters, and any notebooks or notepads, whether or not still in that Plaintiff's possession, through which Plaintiffs purport to have notified any named Defendants, other officers at NYPD, or those in command at Brooklyn Central Booking concerning the conditions complained of in the Complaint.

**Response to Interrogatory 20**:

There is no information responsive to this Interrogatory.

**Interrogatory 21:**

For each Plaintiff, identify each and every document, including any handwritten or typewritten notes, emails, Facebook or other social networking posts, letters, and any notebooks or notepads, whether or not still in that Plaintiff's possession, either created by Plaintiffs or by someone else, concerning or related in any way to the allegations in the Complaint, including Plaintiffs' claim for damages.

**Response to Interrogatory 21**:

Plaintiffs object to this Interrogatory as unreasonably overbroad, vague, and intrusive of the work product and attorney-client privileges. Plaintiffs do not believe

that defendants intend this Interrogatory to require identification of all privileged documents in their counsel's files; to the extent that defendants do, in fact, intend such, plaintiffs object on the grounds that the burden of the proposed discovery outweighs its likely benefit, and is not reasonably calculated to lead to admissible evidence. Without waiving these objections, plaintiffs refer the defendants to their response to Interrogatories 17 and 20.

**Interrogatory 22:**

Identify each person consulted in responding to any of the foregoing interrogatories. For each person so identified, specify the interrogatory concerning which you consulted such person.

**Response to Interrogatory 22**:

There is no information responsive to this Interrogatory.

**Interrogatory 23:**

Identify any experts or consultants who have been retained by or on behalf of the named plaintiffs and/or members of plaintiffs' proposed class in connection with this action concerning the issues raised in this action.

**Response to Interrogatory 23**:

Plaintiff will provide notice as required by Fed. R. Civ. P. 26(a), or the Court's schedule. Presently, there is no information responsive to this Interrogatory.

**Interrogatory 24:**

To the extent not identified in response to the foregoing interrogatories, identify each and every person with knowledge or information relevant to the claims in the Complaint, including Plaintiffs' claims for damages.

**Response to Interrogatory 24:**

        Plaintiffs object to this Interrogatory insofar as it is duplicative. Plaintiffs further object to this Interrogatory as unduly burdensome insofar as it seeks information available to defendants.  Further, plaintiffs do not know or claim to know the identifying information for every person who witnessed, was present at, or has knowledge of the incident or claims.  Plaintiffs note that this information is held by the City of New York or others not in plaintiffs' control.  Plaintiffs also object to the Interrogatory insofar as it calls for a narrative response.  The information sought may be better obtained through an oral deposition.

## DOCUMENT REQUESTS

**Document Request 1:**

        All documents concerning the Plaintiffs' health, hygiene, physical, or mental condition while Plaintiffs were held in Brooklyn Central Booking.

**Response to Request 1:**

        Pursuant to Federal Rule Civil Procedure 33(d), plaintiffs refer defendants to the New York City Police Department and Kings County Criminal Court records in their cases.  Criminal Procedure Law 160.50 releases and medical records releases have already been produced to defendants to obtain these records.

**Document Request 2:**

All documents concerning any damages suffered by Plaintiffs as a result of their time in Brooklyn Central Booking.

**Response to Request 2:**

There are no documents responsive to this Request in plaintiffs' possession.

**Document Request 3:**

All documents, including, but not limited to, correspondence, records of complaint, and/or requests for assistance made by the named Plaintiffs and/or members of Plaintiffs' proposed class, to Defendants or any other organization or City agency or entity, concerning Plaintiffs' allegations in the Complaint.

**Response to Request 3:**

Plaintiffs object to this Request insofar as it seeks documents remaining undisclosed in defendants' possession or control.  Plaintiffs further object to this Interrogatory as unduly burdensome insofar as it seeks information available to defendants.  Without waiving these objections, there are no documents responsive to this Request in plaintiffs' possession.

**Document Request 4:**

All photographs in Plaintiffs' possession depicting either the exterior or interior of Brooklyn Central Booking.

**Response to Request 4:**

There are no documents responsive to this Request in plaintiffs' possession.

**Document Request 5:**

All documents identified in response to any of the foregoing interrogatories.

**Response to Request 5:**

Pursuant to Federal Rule Civil Procedure 33(d), plaintiffs refer defendants to the New York City Police Department and Kings County Criminal Court records in their cases. Criminal Procedure Law 160.50 releases and medical records releases have already been produced to defendants to obtain these records. Plaintiffs refer the defendants to their response to Interrogatories 17, 20, and 21.

**Document Request 6:**

All reports, studies and other documents written by any expert or consultant who has been retained by the named Plaintiffs and/or members of Plaintiffs' proposed class in connection with this action and/or concerning the allegations in the Complaint.

**Response to Request 6:**

Presently, there are no documents responsive to this Request in plaintiffs' possession. Plaintiff will provide such reports as required by Fed. R. Civ. P. 26(a), or the Court's schedule.

**Document Request 7:**

All documents containing statements to the media, made by Plaintiffs, Plaintiffs' counsel, or known members of Plaintiffs' proposed class, other than those produced in response to a previous Request herein, concerning the allegations in the Complaint.

**Response to Request 7:**

        There are no documents responsive to this Request in plaintiffs' possession.

**Document Request 8:**

        All reports, studies and other documents, including any media reports, consulted or relied on by Plaintiffs or Plaintiffs' counsel in formulating the allegations in the Complaint.

**Response to Request 8:**

        There are no documents responsive to this Request in plaintiffs' possession.

**Document Request 9:**

        To the extent not provided in response to one of the foregoing requests, all documents concerning any of the allegations in the Complaint, including Plaintiffs' claim for damages.

**Response to Request 9:**

Plaintiffs object to Request insofar as it is duplicative.   Plaintiffs also object to this Request insofar as it seeks documents remaining undisclosed in defendants' possession or control.   Plaintiffs further object to this Request as unduly burdensome insofar as it seeks information available to defendants.   Without waiving these objections, there are no further documents responsive to this Request in plaintiffs' possession.

DATED:        January 13, 2014

ANDREW RENDEIRO
Attorney at Law
16 Court Street, Suite # 3301
Brooklyn, New York 11241
(718) 237-1900

MICHAEL HUESTON
Attorney at Law
16 Court Street, Suite # 3301
Brooklyn, New York 11241
(718) 246-2900

RICHARD CARDINALE
Attorney at Law
26 Court Street, Suite 1815
Brooklyn, New York 11242
(718) 624-9391

# VERIFICATION

I, Germain Cano, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that my answers to Defendants' First Set of Interrogatories are true and correct.

Executed on _____Nov. 10_____, 2014.

_____

GERMAIN CANO

# VERIFICATION

I, Eric Cephus, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that my answers to Defendants' First Set of Interrogatories are true and correct.

Executed on <u>November 13,</u> , 2014.

ERIC CEPHUS

# VERIFICATION

I, Kevin Darnell, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that my

answers to Defendants' First Set of Interrogatories are true and correct.

Executed on _____, 2014.

_____
KEVIN DARNELL

# VERIFICATION

I, Michael Glenn, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that my answers to Defendants' First Set of Interrogatories are true and correct.

Executed on _12/2/_____, 2014.

_____
MICHAEL GLENN

# **VERIFICATION**

I, Deborah Gonzalez, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that

my answers to Defendants' First Set of Interrogatories are true and correct.

Executed on ⎪- ◯ 8 _____, 2014.

_____
DEBORAH GONZÁLEZ

# **VERIFICATION**

I, Travis Gordon, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that my

answers to Defendants' First Set of Interrogatories are true and correct.

Executed on _____ 11 / 11 _____, 2014.

TRAVIS GORDON

# VERIFICATION

I, Jacqueline Guarino, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that

my answers to Defendants' First Set of Interrogatories are true and correct.

Executed on ___12/14/14___, 2014.

_____
JACQUELINE GUARINO

I, _Keith Jennings_, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that my answers to defendants' first set of interrogatories are true and correct.

Executed on _Nov 13_, 2014.

_Keith Jennings_

# VERIFICATION

I, Wesley Jones, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that my

answers to Defendants' First Set of Interrogatories are true and correct.

Executed on _12 / 15 / 2014_ , 2014.

_Wesley Jones_
WESLEY JONES

# VERIFICATION

I, Gregory Maugeri, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that

my answers to Defendants' First Set of Interrogatories are true and correct.

Executed on ___12|2___, 2014.

_____
GREGORY MAUGERI

# VERIFICATION

I, Michael McGhee, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that

my answers to Defendants' First Set of Interrogatories are true and correct.

Executed on _December 2_, 2014.

MICHAEL McGHEE

# VERIFICATION

I, Dmitriy Miloslavskiy, declare under penalty of perjury, pursuant to 28 U.S.C. §1746,

that my answers to Defendants' First Set of Interrogatories are true and correct.

Executed on  *November 12*          , 2014.

DMITRIY MILOSLAVSKIY

# VERIFICATION

I, Yvonne Ming, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that my answers to Defendants' First Set of Interrogatories are true and correct.

Executed on ___11 | 18 | _____, 2014.

YVONNE MING

# VERIFICATION

I, Kerry Scott, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that my

answers to Defendants' First Set of Interrogatories are true and correct.

Executed on  12- 4- 14        , 2014.

KERRY SCOTT

# VERIFICATION

I, Phillip Singleton, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that

my answers to Defendants' First Set of Interrogatories are true and correct.

Executed on _____, 2014.

_____
PHILLIP SINGLETON

# VERIFICATION

I, Michael Spalango, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that

my answers to Defendants' First Set of Interrogatories are true and correct.

Executed on ___Nov / º___, 2014.

MICHAEL SPALANGO

Philip Benivegna
Notary Public of New York
No. 24-4728427
Qual in Kings County Comm Exp 1/31/1

# VERIFICATION

I, Raymond Tucker, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that

my answers to Defendants' First Set of Interrogatories are true and correct.

Executed on ___12|8___, 2014.

RAYMOND TUCKER

# VERIFICATION

I, Nancy Viglione, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that my

answers to Defendants' First Set of Interrogatories are true and correct.

Executed on ⅃⅃ ⅃⅃⅃⅃⅃⅃⅃⅃⅃⅃⅃⅃, 2014.

_____
NANCY VIGLIONE

# VERIFICATION

I, Ellie Vikki, declare under penalty of perjury, pursuant to 28 U.S.C. §1746, that my answers to Defendants' First Set of Interrogatories are true and correct.

Executed on _____ //- /0 _____ , 2014.

ELLIE VIKKI